UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ANDREW BRITT,                                    :          10-CV-00168-DNH-DRH
                                                 :
                            Plaintiff,           :
             - against -                         :
                                                 :
GENERAL STAR INDEMNITY COMPANY                   :
                                                 :
                            Defendant.           :
-----------------------------------------------------------------X


# GENERAL STAR INDEMNITY COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

MARSHALL, CONWAY,
WRIGHT & BRADLEY, P.C.
116 John Street
New York, NY 10038
(212) 619-4444
Attorneys for Defendant
General Star Indemnity Company

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ……………………………………………………...1

RELEVANT FACTS……………………………………………………………...3

APPLICABLE LEGAL STANDARD…………………………………….................7

ARGUMENT…………………………………………………………………...8

I.      PLAINTIFF HAS FAILED TO PROVE THAT BRIDGES IS AN
        INSURED UNDER THE GENERAL STAR POLICY…………………..8

        A.    Bridges is Not an Insured under the General Star Policy…………8

        B.    Plaintiff is Precluded from Re-Litigating that Bridges is an Insured
              under the General Star Policy……………………………………10

II.     NEW YORK INSURANCE LAW §3420 IS INAPPLICABLE…………11

        A.    General Star was Never Required to Disclaim to the Non-Insured
              Bridges…………………………………………...…………………12

        B.    New York Insurance Law §3420 is not Available Because the
              Judgment was Rendered Against a Criminal Tortfeasor…………17

        C.    Plaintiff's Citation to Certain Cases is Misplaced………...……..18

III.    THE GENERAL STAR POLICY ONLY ATTACHES IN EXCESS OF
        THE RETAINED LIMIT………………………………………………….20

IV.     THE UNDERLYING EX PARTE JUDGMENT IS UNEFORCEABLE
        AS A MATTER OF LAW……………………………………………22

CONCLUSION……………………………………………………………….25

MARSHALL, CONWAY, WRIGHT & BRADLEY  •  116 JOHN STREET  •  NEW YORK, N. Y. 10038

# TABLE OF AUTHORITIES

Cases

*Albert J. Schiff Associates, Inc. v. Flack*, 51 N.Y.2d 692, 435 N.Y.S.2d 972 (N.Y. 1980)...................................................................................................12

*Allstate Ins. Co. v. Massre*, 14 A.D.3d 610, 789 N.Y.S.2d 206 (N.Y. 2005).................13

*Alvarez v. Prospect Hosp.*, 68 N.Y.2d 320, 508 N.Y.S.2d 923 (1986).......................7

*Am. Home Assurance Co. v. Republic Ins. Co.*, 984 F.2d 76, 77 (2d Cir. 1993)............20

*Ambassodor Assocs. v. Corcoran*, 143 Misc.2d 706, 541 N.Y.S.2d 715 (N.Y. Sup. Ct., New York County, 1989)...............................................................................22

*Blenner v. Joseph Landis, Inc.*, 277 A.D. 489, 100 N.Y.S.2d 795 (3rd Dep't 1950).......19

*Britt et al. v. Pharmacologic Pet Services, Inc. and Dennis Bridges*, 26 A.D.3d 1039, 828 N.Y.S.2d 630 (3d Dep't 2007)........................................................10, 12

*Celotex v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986)...................................7

*Ciasullo v. Nationwide Ins. Co.*, 2006 NY Slip Op 6549, 1 (2d Dep't 2006)...............14

*Coach Leatherware Co. v. Ann Taylor Inc.*, 933 F.2d 162 (2d Cir. 1991)...................7

*Consolidated Edison Co. of N.Y., Inc. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 746 N.Y.S.2d 622 (2002)...............................................................................................9

*Cont'l Cas. Co. v. Luhrs*, 299 A.D.2d 357, 749 N.Y.S.2d 175 (2d Dep't 2002)............15

*Continental Cas. Co. v. Employers Ins. Co. of Wausau*, 60 A.D.3d 128, 871 N.Y.S.2d 48, 54 (1st Dept. 2008)...................................................................................9

*Cross v. N.Y. City Transit Auth.*, 417 F.3d 241, 258 (2d Cir. 2005)..........................22

*Dodge v. Legion Ins. Co.*, 102 F.Supp.2d 144 (S.D.N.Y 2000)...............................16

*Empire Fire & Marine Ins. Co. v. Elrac, Inc.*, 2006 WL 3734308 (S.D.N.Y 2006)........14

*Gill v. Gouchie*, 210 A.D.2d 954, 620 N.Y.S.2d 679 (4th Dep't 1994).....................19

*Greater N.Y. Mut. Ins. Co. v. Clark*, 205 A.D.2d 857, 613 N.Y.S.2d 295 (3rd Dep't 1994)...............................................................................................18, 19

MARSHALL, CONWAY, WRIGHT & BRADLEY  ·  116 JOHN STREET  ·  NEW YORK, N. Y. 10038

*Griffith v. Bank of New York*, 147 F.2d 899 (2d Cir. N.Y. 1945)............................22

*Hargob Realty Associates v. Fireman's Fund Insurance Company*, __ AD3d__ (2nd Dep't April 19, 2010)....................................................................................15

*Hunter Roberts Constr. Group, LLC v. Arch Ins. Co.*, 2010 N.Y. Slip Op. 5861, 3 (1st Dep't 2010)...............................................................................................13

*Huurman v. Foster*, 2010 U.S. Dist. LEXIS 61454 (S.D.N.Y. 2010)..........................7

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007).......................................10

*John v. Centennial Ins. Co.*, 91 A.D.2d 1104, 458 N.Y.S.2d 350 (3d Dep't 1983)........14

*Katz v. Allstate Ins. Co.*, 96 A.D.2d 930, 466 N.Y.S.2d 376 (2d Dep't 1983).............17

*Liberty Mut. Ins. Co. v. Insurance Co. of the State of Pa.*, 43 A.D.3d 666, 841 N.Y.S.2d 288 (2d Dept. 2007)........................................................................................21

*Lumbermens Mut. Cas. Co. v. Allstate Ins. Co.*, 51 N.Y.2d 651, 435 N.Y.S.2d 953 (1980).......................................................................................................20

*Markevics v. Liberty Mut. Ins. Co.*, 97 N.Y.2d 646, 735 N.Y.S.2d 865 (N.Y. 2001)......13

*Massachusetts Bay Ins. Co. v. National Sur. Corp.*, 215 A.D.2d 456, 626 N.Y.S.2d 271 (2d Dep't 1995).............................................................................................16

*Matter of Government Employees Ins. Co. v. Spence*, 2005 NY Slip Op 8714 (2d Dep't 2005)........................................................................................................14

*Moneta Development Corp. v. Generali Ins. Co. of Trieste and Venice*, 212 A.D.2d 428, 622 N.Y.S.2d 930 (1st Dept. 1995).....................................................................9

*Nationwide Ins. Co. v. Smaller*, 271 A.D.2d 537, 706 N.Y.S.2d 140 (2d Dep't 2000)...15

*NGM Insurance Company v. Blakely Pumping, Inc.*, 593 F3d 150 (2d Cir. 2010)...*passim*

*Northville Indus. v. National Union Fire Ins. Co. of Pittsburgh, PA.*, 89 N.Y.2d 621, 657 N.Y.S.2d 564 (1997)........................................................................................9

*Pergament Distrib. Inc. v. Old Republic Ins. Co.*, 128 A.D.2d 760, 513 N.Y.S.2d 467 (2d Dept. 1987)................................................................................................22

*Planet Ins. Co. v. Bright Bay Classic Vehicles, Inc.*, 75 N.Y.2d 394, 554 N.Y.S.2d 84 (N.Y. 1990)................................................................................................20

MARSHALL, CONWAY, WRIGHT & BRADLEY · 116 JOHN STREET · NEW YORK, N.Y. 10038

*Preferred Mut. Ins. Co. v. Ryan*, 175 A.D.2d 375, 378 (3rd Dep't 1991)....................9

*Ramsey v. Coughlin*, 94 F.3d 71 (2d Cir. 1996)................................................7

*San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 125 S. Ct. 2491 (2005)..........................................................................................................11

*Siragusa v. Granite State Ins. Co.*, 65 A.D.3d 1216, 886 N.Y.S.2d 432 (N.Y. 2009).....14

*Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 337 (2d Cir. 1993)..23

*Travelers Cas. & Sur. Co. v. Gerling Global Reinsurance Corp. of Am.*, 419 F.3d 181 (2d Cir. 2005)...................................................................................................7

*Tribeca Broadway Assocs., LLC v. Mount Vernon Fire Ins. Co.*, 5 A.D.3d 198, 774 N.Y.S.2d 11 (1st Dep't 2004)..............................................................................15

*United States Fid. & Guar. Co. v. Treadwell Corp.*, 58 F. Supp. 2d 77 (S.D.N.Y. 1999)........................................................................................................22

*United States Fire Ins. Co. v. New York Marine & Gen. Ins. Co.*, 268 A.D.2d 19, 706 N.Y.S.2d 377 (1st Dep't 2000)..........................................................................16

*Van Gorder v. Lira*, 2010 U.S. Dist. LEXIS 30587 (N.D.N.Y 2010).......................10

*Worcester Ins. Co. v. Bettenhauser*, 95 N.Y.2d 185, 712 N.Y.S.2d 433 (N.Y. 2000).....13

*Zappone v. Home Ins. Co.*, 55 N.Y.2d 131, 447 N.Y.S.2d 911 (N.Y. 1982)............ *passim*

*Zurich-American Ins. Co. v. Mead Reins. Corp.*, 161 A.D.2d 403, 555 N.Y.S.2d 333 (1st Dept. 1990)...................................................................................................22

## Statutes

Insurance Law §3420..................................................................................*passim*

N.Y. C.P.L.R. §5041.......................................................................................24

N.Y. C.P.L.R. 50-B.........................................................................................24

## Rules

Fed R. Civ. Pro. 60(b) (1)-(6)...... ............................................................................. 22

Defendant General Star Indemnity Company ("General Star") respectfully submits this memorandum of law in opposition to Plaintiff's, Andrew Britt's ("Plaintiff") motion for summary judgment against Defendant General Star.

## PRELIMINARY STATEMENT

Plaintiff has commenced a direct action pursuant to New York Insurance Law §3420 against General Star seeking to recover a judgment obtained *ex parte* in the amount of $2,402,962.45 in the New York Supreme Court, County of Albany. General Star issued Commercial Umbrella Policy No. IUG330127F ("General Star Policy") to the insured Pharmacologic PET Services Inc. ("Pharmacologic") for the period of February 6, 2001 to February 6, 2002. Dennis Bridges ("Bridges") was a stranger to the General Star Policy.

Bridges was fleeing from the police after committing numerous felonies when he struck Plaintiff and is currently serving a lengthy prison sentence in connection with his crimes. Plaintiff seeks to recover the unsatisfied judgment obtained against Bridges from General Star. There is no dispute that Bridges was responsible for causing Plaintiff's injuries. However, there is simply no factual or legal basis for Plaintiff to claim that General Star must satisfy the judgment assessed against Bridges due to his multiple criminal acts. Bridges is not an insured under the General Star Policy. As such, New York Insurance Law §3420 is inapplicable.

Fortunately, it has already been decided by the Albany County Supreme Court and the Appellate Division, Third Department that Bridges did not have Pharmacologic's permission to use the van he was driving in the course of a lengthy crime spree that ended with Bridges being indicted for multiple felonies and the disposition of a 25 year to life

1

prison sentence. As the issue of permissive use was already litigated, and upheld on appeal, there is absolutely no dispute that Bridges is not an insured under the General Star Policy. Any arguments to the contrary are disingenuous and derisory.

Since Bridges was not operating the vehicle with the permission of Pharmacologic during the course of his crime spree, General Star is under no obligation to issue a disclaimer. Plaintiff misinterprets Insurance Law §3420 by alleging that even though General Star does not insure Bridges, General Star's failure to timely disclaim, in and of itself, somehow created coverage that was never present. Since Bridges was not an insured under the General Star Policy, coverage cannot be created by estoppel where none ever existed.

Moreover, Insurance Law §3420 only provides limited rights with respect to direct actions against insurers. A person relying on Insurance Law §3420 can only bring an action against an insurance company for an outstanding judgment against an insured, not against a tortfeasor. Despite this clear statutory provision, Plaintiff incredulously claims that he is actually able to "step into the shoes" of the criminal tortfeasor Bridges to demand payment from General Star. The General Star Policy was issued to Pharmacologic, not Bridges. There are simply no "shoes" for Plaintiff to step into.

Finally, the General Star Policy is an excess insurance policy which only responds and attaches when all underlying insurance is exhausted. As the retained limit has not been exhausted, General Star has no obligation to satisfy the outstanding judgment levied against the non-insured Britt.

Based on prior holdings by two New York courts finding that Bridges was not a permissive user, the wording of Insurance Law §3420, well-settled New York case law,

2

the insuring agreement of the General Star Policy, which was issued to Pharmacologic, and the indisputable facts present, Plaintiff's motion for summary judgment must be denied in its entirety.

## **RELEVANT FACTS**

### **Criminal Activity and the Underlying Accident**

At approximately midnight on September 21, 2001, Bridges was many hours into a crime spree. During this spree, Bridges, a repeat criminal offender, had committed numerous felonies, including robbery and receiving stolen property. While fleeing the scene of the crimes, five Albany City police cruisers began pursuit of Bridges. Bridges struck Plaintiff, one of the police officers, and fractured his right foot.[1]

### **Bridges' Criminal Charges and Conviction**

On October 30, 2001, Bridges was charged with felonious assault on a police officer, felonious reckless endangerment and criminal possession of stolen property. This was not the first time Bridges encountered the criminal justice system.

According to Bridges' indictments on October 30, 2001, File No. 011883, he was charged with:

- "Assault on a police officer . . . a Class C Felony, in that [Bridges] . . . did, with intent to prevent a police officer from performing a lawful duty cause serious physical injury to such police officer . . ."

- "Reckless endangerment in the First Degree . . ., a Class D Felony in that [Bridges] . . . did, under circumstances evincing a depraved indifference to human life, recklessly engage in conduct which created a grave risk of death to another person . . ."

---

[1] General Star does not dispute that Plaintiff was injured and fractured his right foot almost nine years ago. General Star also wishes to make plain that it does not deny that Plaintiff suffered these injuries solely due to the actions of the fleeing felon Bridges. General Star believes Bridges' lengthy prison sentence was justified. Finally, General Star is pleased that Plaintiff made a speedy recovery, returned to his position as an Albany City police officer and remains on active duty with the Air National Guard.

MARSHALL, CONWAY, WRIGHT & BRADLEY · 116 JOHN STREET · NEW YORK, N. Y. 10038

- "Criminal Possession of Stolen Property in the Fourth Degree . . . in that [Bridges] did knowingly possess stolen property, with intent to benefit himself or a person other than the owner thereof or to impede the recovery by the owner thereof . . . consisting of an IBM ThinkPad computer and a silver necklace, such property having been stolen, with intent to benefit himself, such property having a value in excess of One Thousand Dollars ($1,000.00)."

*See* General Star's Statement of Material Facts, ¶ 1; *See* Declaration of Christopher Bradley, ¶ 1.

Bridges' crime spree, and the resulting police pursuit were reported in the local press. The Albany Times Union reported that five police cars had been chasing Bridges and that Bridges' use of the van "was for purely personal, or illegal, uses." *Albany Times Union*, February 21, 2008; *See* General Star's Statement of Material Facts, ¶ 2; *See* Declaration of Christopher Bradley, ¶ 2.

Due to the nature of his crimes, Bridges was sentenced to a prison term of 25 years to life and is currently serving his sentence at Greenhaven Correctional Facility.

**The Underlying Lawsuit**

On October 24, 2002, a lawsuit was filed in the Supreme Court of New York, County of Albany, entitled, *Andrew Britt and Angela Britt v. Pharmacologic Pet Services, Inc. and Dennis Bridges*, Index No.: 7092-02, whereby Plaintiff sought damages for the injuries caused by the criminal acts of Bridges.

**Pharmacologic Insurance Policies**

Hartford Fire Insurance Company ("Hartford") issued primary policy number 81 UEC UH1270 to Pharmacologic for the policy period from November 17, 2000 to November 17, 2001.

4

St. Paul Insurance Company/Travelers ("St. Paul") issued primary policy number EK06615861 to Pharmacologic for the policy period from May 16, 2001 to May 16, 2004.

General Star issued Commercial Umbrella Policy No. IUG330127F to the Pharmacologic PET Services Inc. for the period of February 6, 2001 to February 6, 2002.

On February 25, 2004, General Star advised Bridges that there was no coverage for his criminal activities and copied same to the General Star insured, Pharmacologic. General Star informed Bridges that, "The policy indicates that one is [only] considered an insured while operating an auto with permission of the insured."

## New York Supreme Court and Appellate Decisions Finding Lack of Permission

Pharmacologic did not give Bridges permission to drive the van, a fact evident by the judicial declarations of Supreme Court, Albany County, and the Appellate Division, Third Department. The Supreme Court held that "defendant Pharmacologic Pet Services has made a *prima facie* showing that defendant *Bridges did not have permission* to use the company van at the time of the incident." *Britt et al. v. Pharmacologic Pet Services, Inc. and Dennis Bridges*, Supreme Court, Albany County Motion Term, August 1, 2005 (emphasis added). *See* General Star's Statement of Material Facts, ¶ 3; *See* Declaration of Christopher Bradley, ¶ 3.

The New York Appellate Division, Third Department affirmed the decision. *See Britt et al. v. Pharmacologic Pet Services, Inc. and Dennis Bridges*, 26 A.D.3d 1039, 828 N.Y.S.2d 630 (3d Dep't 2007). *See* General Star's Statement of Material Facts, ¶ 4; *See* Declaration of Christopher Bradley, ¶ 4.

## Jury Award

This matter proceeded to trial and on February 19, 2008, a jury awarded Plaintiffs $3,162,860.63.

Pharmacologic moved to have the verdict set aside as to liability and/or reduce the jury award for lost earnings, loss of services and pain and suffering.

On October 21, 2008, the Supreme Court, Albany County issued a decision, decreasing the verdict for past pain and suffering from $500,000 to $250,000; decreasing the verdict for future pain and suffering from $1,000,000 to $500,000 and vacated the award for $42,249 for loss of household services, for a total reduction of $792,249.

Pharmacologic filed a Notice of Appeal. During the appeal, but before any briefing, Pharmacologic settled with Plaintiffs. The Plaintiffs, *ex parte*, then proceeded to enter judgment against Bridges.

On November 17, 2009, Plaintiff contacted Pharmacologic's insurer, General Star, demanding $2,402,962.45 and threatened legal action if this amount was not paid within 30 days. *See* General Star's Statement of Material Facts, ¶ 5; *See* Declaration of Christopher Bradley, ¶ 5.

## The Instant Lawsuit

On January 15, 2010, Plaintiff commenced the instant action against Pharmacologic's insurer, General Star, seeking to recover the outstanding judgment obtained against Bridges.[2] Issue was joined by service of General Star's Answer with Cross-Claims on February 26, 2010. *See* Plaintiff's Exhibit ¶ 1b.

---

[2] For purposes of completeness, the instant lawsuit was originally filed in the Supreme Court of Albany County. General Star moved to remove the litigation before this Court. Plaintiff moved to remand the action back to the Supreme Court. Based on General Star's legal argument in the opposition to the motion

6

## APPLICABLE LEGAL STANDARD

General Star submits that in the instant lawsuit, Plaintiff has failed to show that he is entitled to a judgment as a matter of law. "As we have stated frequently, the proponent of a summary judgment motion must make a *prima facie* showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. Failure to make such *prima facie* showing requires a denial of the motion, regardless of the sufficiency of the opposing papers." *Alvarez v. Prospect Hosp.*, 68 N.Y.2d 320, 508 N.Y.S.2d 923 (1986) (citations omitted).

Furthermore, if the court concludes that the movant has failed to establish the existence of a material factual dispute requiring further proceedings and that the non-moving party is entitled to judgment as a matter of law, it may grant summary judgment to the non-moving party *sua sponte*. *Travelers Cas. & Sur. Co. v. Gerling Global Reinsurance Corp. of Am.*, 419 F.3d 181 (2d Cir. 2005); *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109 (2d Cir. 1999); *Huurman v. Foster*, 2010 U.S. Dist. LEXIS 61454 (S.D.N.Y. 2010).

It is well established that a district court may enter summary judgment *sua sponte* in the absence of a formal cross-motion if it concludes that the non-movant is entitled to summary judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986) (district courts "are widely acknowledged to possess the power to enter summary judgments sua sponte"); *Ramsey v. Coughlin*, 94 F.3d 71 (2d Cir. 1996). Indeed, *sua sponte* grants of summary judgment are "an accepted method of expediting litigation." *Coach Leatherware Co. v. Ann Taylor Inc.*, 933 F.2d 162 (2d Cir. 1991).

---

to remand, Plaintiff immediately requested permission to withdraw his motion. This Court granted Plaintiff's request *with prejudice* on April 9, 2010.

MARSHALL, CONWAY, WRIGHT & BRADLEY · 116 JOHN STREET · NEW YORK, N.Y. 10038

Here, there are no disputed issues of material fact. It is undisputed that the General Star excess policy was issued to Pharmacologic, not Bridges. Moreover, Bridges has already been found by two courts not to have operated the vehicle with Pharmacologic's permission, a fundamental pre-requisite to insured status under the General Star Policy. As such, there are no insured "shoes" for Bridges to "step into" to maintain this direct action under Insurance Law § 3420. Moreover, Insurance Law §3420 does not require General Star, or any insurer for that matter, to advise someone that is not an insured that they are not insured. Because there are no disputed issues of material fact, this Court may *sua sponte* grant General Star summary judgment.

**ARGUMENT**

**I.  PLAINTIFF HAS FAILED TO PROVE THAT BRIDGES IS AN INSURED UNDER THE GENERAL STAR POLICY**

A.    Bridges is Not an Insured under the General Star Policy

Despite it being the central issue of Plaintiff's claim, not once does Plaintiff submit any proof, or put forth any argument for that matter, that Bridges is an insured under the General Star Policy. Based on the undisputed facts, New York law and prior New York Court decisions, there is no dispute that Bridges is not an insured under the General Star Policy and hence, General Star has no obligation with respect to the non-insured Bridges.

General Star issued its policy to Pharmacologic.

The General Star Policy, which Plaintiff completely ignores, provides:

**Section III**

Who Is An Insured

3.   With respect to an (i) **auto** or (ii) **mobile equipment**, provided such **mobile equipment** is registered in **your** name under any motor vehicle registration law, any person is an insured while driving such auto or mobile equipment *with your permission.* (emphasis added)

To succeed Plaintiff must demonstrate that Bridges is an insured under the General Star Policy. The General Star Policy was issued to Pharmacologic, not Bridges. It is undisputed that Bridges did not have Pharmacologic's permission to drive the subject vehicle.

As such, Plaintiff cannot "step into the shoes" of Bridges for purposes of Insurance Law §3420. *See Consolidated Edison Co. of N.Y., Inc. v. Allstate Ins. Co.,* 98 N.Y.2d 208, 746 N.Y.S.2d 622 (2002); *Northville Indus. v. National Union Fire Ins. Co. of Pittsburgh, PA.,* 89 N.Y.2d 621, 657 N.Y.S.2d 564 (1997); *Continental Cas. Co. v. Employers Ins. Co. of Wausau,* 60 A.D.3d 128, 871 N.Y.S.2d 48, 54 (1st Dept. 2008); *Moneta Development Corp. v. Generali Ins. Co. of Trieste and Venice,* 212 A.D.2d 428, 622 N.Y.S.2d 930 (1st Dept. 1995); *Preferred Mut. Ins. Co. v. Ryan,* 175 A.D.2d 375, 378 (3rd Dep't 1991) ("[T]he party asserting that someone other than a named insured is an insured under a policy bears the initial burden of submitting proof in evidentiary form that the alleged insured is, in fact, an insured within the meaning of the policy.").

However, Plaintiff does not and cannot dispute that Bridges did not have permission from Pharmacologic to drive the vehicle in question, and thus he could not be an insured.

The Supreme Court Albany County ruled that "defendant Pharmacologic Pet Services has made a *prima facie* showing that defendant *Bridges did not have permission to use the company van at the time of the incident." Britt et al. v. Pharmacologic Pet Services, Inc. and Dennis Bridges,* Supreme Court, Albany County Motion Term, August

9

1, 2005 (emphasis added). *See* General Star's Statement of Material Facts, ¶ 3; *See* Declaration of Christopher Bradley, ¶ 3.

The Appellate Division, Third Department affirmed and found that, "[P]laintiffs failed to raise a material question of fact as to whether Bridges' operation of the minivan exceeded the time, place and purpose of the use permitted by Pharmacologic PET Services, Inc. Accordingly, we find no error in Supreme Court's decision." *Britt et al. v. Pharmacologic Pet Services, Inc. and Dennis Bridges*, 26 A.D.3d 1039, 828 N.Y.S.2d 630 (3d Dep't 2007). *See* General Star's Statement of Material Facts, ¶ 4; *See* Declaration of Christopher Bradley, ¶ 4.

These decisions are dispositive to any claim that Bridges was insured under the General Star Policy, a mandatory pre-requisite for coverage.

Plaintiff cannot make out a *prima facie* case and therefore Plaintiff's motion must be denied in its entirety as a matter of law.

B.   Plaintiff is Precluded from Re-Litigating that Bridges is an Insured under the General Star Policy

Based on the aforementioned decisions, Plaintiff is precluded from now asserting that Bridges operated the vehicle with Pharmacologic's permission.[3] As a consequence, Plaintiff cannot seek insurance coverage from General Star. *Van Gorder v. Lira*, 2010 U.S. Dist. LEXIS 30587 (N.D.N.Y 2010) ("[T]he doctrine of collateral estoppel bars the relitigation of issues that were actually litigated and decided in a prior proceeding, as long as that determination was essential to that judgment."); *Jenkins v. City of New York*,

---

[3] General Star notes that Vehicle & Traffic Law §388 renders an owner liable for damages caused by negligence of anyone driving the owner's vehicle with permission. This rebuttable presumption only applies to liability. Pharmacologic rebutted this presumption before the New York Supreme Court and the Appellate Division, Third Department. *There is no presumption of insured status under an insurance policy.* This is precisely why the burden of proof is on the putative insured to prove status as a threshold issue. As noted above, the General Star Policy was issued to Pharmacologic, not Bridges.

478 F.3d 76 (2d Cir. 2007) ("In New York, collateral estoppel has two essential elements. First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination.") *San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 125 S. Ct. 2491 (2005) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.")

The issue whether Bridges had permission from Pharmacologic to drive the subject vehicle was previously litigated and decided, in an action where Plaintiff was a party and was represented by the same law firm that now represents him in this action. Both courts found that no permission was given. Plaintiff is collaterally estopped from re-litigating the issue of "permissive use" in this action.

Accordingly, Plaintiff's motion must be denied in its entirety as a matter of law.

## II.   NEW YORK INSURANCE LAW §3420 IS INAPPLICABLE

Plaintiff's basic contention seems to be that since General Star failed to timely disclaim, it is now estopped from disclaiming and automatically must indemnify Bridges. This might be the case if General Star was relying on an exclusion in the policy to avoid coverage. However, General Star simply advised Bridges that he was not an insured under its policy. This does not, as a matter of law, require a disclaimer under Insurance Law §3420 in the first place. As a consequence, the instant case underscores the maxim that you cannot create coverage by estoppel. Assume *arguendo* that General Star never sent any letter whatsoever to Bridges. We end up in the same place. Bridges is still not

11

an insured under the subject policy and General Star still has no obligation to satisfy the subject judgment under Insurance Law §3420.

A.      General Star was Never Required to Disclaim to the Non-Insured Bridges

In order to prevail, Plaintiff must necessarily establish as a matter of law, that Bridges was operating the vehicle with the permission of Pharmacologic at the time of the subject accident. It is undisputed, however, that this precise factual and legal issue has already been decided by the Supreme Court, Albany County *See* General Star's Statement of Material Facts, ¶ 3; *See* Declaration of Christopher Bradley, ¶ 3, and affirmed on appeal by the Appellate Division, Third Department. *See* General Star's Statement of Material Facts, ¶ 4; *See* Declaration of Christopher Bradley, ¶ 4.

Long ago, the New York Court of Appeals in *Albert J. Schiff Associates, Inc. v. Flack*, 51 N.Y.2d 692, 435 N.Y.S.2d 972 (N.Y. 1980) held that, ". . . a failure [to disclaim coverage] does not create coverage where none existed initially."

A few years later, in 1982, the New York Court of Appeals once again addressed the issue of when a disclaimer is required and when one was not. In *Zappone v. Home Ins. Co.*, 55 N.Y.2d 131, 447 N.Y.S.2d 911 (N.Y. 1982), the Court of Appeals held,

> "In the third, though the carrier may have some other relationship with the owner or driver of the vehicle, it has no contract with that person with respect to the vehicle involved and, there being no contractual relationship with respect to the vehicle, is not required to deny coverage or otherwise respond to a claim arising from an accident involving that vehicle except as statute mandates or courtesy suggests."

The Court also decided that,

> "We do not reach that issue for we conclude that the Legislature in using the words 'denial of coverage' did not intend to require notice when there never was any insurance in effect, and intended by that phrase to cover only situations in which a policy of insurance that would otherwise cover

12

the particular accident is claimed not to cover it because of an *exclusion* in the policy." (emphasis added).

Over the years since then, many courts have considered this issue and now it is well-settled and undisputed that a disclaimer is unnecessary when the facts do not fall within the coverage terms of an insurance policy. *Worcester Ins. Co. v. Bettenhauser*, 95 N.Y.2d 185, 712 N.Y.S.2d 433 (N.Y. 2000) ("Disclaimer pursuant to section 3420 (d) is unnecessary when a claim falls outside the scope of the policy's coverage portion. Under those circumstances, the insurance policy does not contemplate coverage in the first instance, and requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed."); *Markevics v. Liberty Mut. Ins. Co.*, 97 N.Y.2d 646, 735 N.Y.S.2d 865 (N.Y. 2001) ("A disclaimer is unnecessary when a claim does not fall within the coverage terms of an insurance policy."); *Hunter Roberts Constr. Group, LLC v Arch Ins. Co.*, 2010 NY Slip Op 5861, 3 (1st Dep't 2010) ("Insofar as a denial of coverage is based upon lack of coverage . . . disclaimer is unnecessary."); *Allstate Ins. Co. v. Massre*, 14 A.D.3d 610, 789 N.Y.S.2d 206 (N.Y. 2005) ("[W]e note that State Farm was not required by Insurance Law §3420 (d) to issue a disclaimer because its denial of coverage was based upon a lack of coverage and not a policy exclusion.").

In the instant matter, under Section III, Who is an Insured of the General Star Policy, Bridges is not included as an insured for the simple reason that he was not operating the automobile with the permission of Pharmacologic. Under these circumstances, a disclaimer was not required to be sent to Bridges. In fact, a disclaimer never had to be prepared at all because the underlying accident did not fall within the coverage terms of the General Star policy.

13

Cases are legion that no disclaimer is necessary to a non-insured. *Empire Fire and Marine Ins. Co. v. Elrac, Inc.*, 2006 WL 3734308 (S.D.N.Y. 2006) ("The New York Court of Appeals has explained that the requirement of a timely disclaimer does not apply when the putative insured party was never insured to begin with . . . [T] his principle is easy to understand. An insurer is not required to disclaim coverage where no coverage exists."); *Ciasullo v. Nationwide Ins. Co.*, 2006 NY Slip Op 6549, 1 (2d Dep't 2006). ("[A] disclaimer pursuant to Insurance Law §3420(d) "is unnecessary when a claim falls outside the scope of the policy's coverage portion.")

Moreover, in a recent New York Court of Appeals decision, *Siragusa v. Granite State Ins. Co.*, 65 A.D.3d 1216, 886 N.Y.S.2d 432 (N.Y. 2009), the Court of Appeals found that, "A disclaimer is unnecessary when a claim does not fall within the coverage terms of an insurance policy . . . Therefore, where a claim is denied because the claimant is not an insured under the policy, there is no statutory obligation to provide prompt notice of the disclaimer." Continuing, in *John v. Centennial Ins. Co.*, 91 A.D.2d 1104, 458 N.Y.S.2d 350 (3d Dep't 1983), the court held, [N]o notice is required where there is non-coverage in the first instance. The Court of Appeals held that the Legislature, in using the words 'denial of coverage' in [§3420], did not intend to require notice when there never was any insurance in effect, and intended by that phrase to cover only situations in which a policy of insurance that would otherwise cover the particular accident is claimed not to cover it because of an exclusion in the policy."; *Matter of Government Employees Ins. Co. v. Spence*, 2005 NY Slip Op 8714 (2d Dep't 2005)(Timely notice of an intent to disclaim pursuant to Insurance Law § 3420 (d) "is

unnecessary when a claim does not fall within the coverage terms of an insurance policy.")

The court in *Nationwide Ins. Co. v. Smaller*, 271 A.D.2d 537, 706 N.Y.S.2d 140 (2d Dep't 2000) opined, "Where a party is not a covered person under an insurance policy, the insurance carrier has no statutory obligation to provide that party with prompt notification of disclaimer."; *see also Tribeca Broadway Assocs., LLC v. Mount Vernon Fire Ins. Co.*, 5 A.D.3d 198, 774 N.Y.S.2d 11 (1st Dep't 2004); ("It is well established that the party claiming insurance coverage bears the burden of proving entitlement, and a party that is not named as an insured or an additional insured on the face of the policy is not entitled to coverage . . . Insofar as the claim fell outside of the policy's coverage, the carrier was not required to disclaim as to coverage that did not exist."); *Cont'l Cas. Co. v. Luhrs*, 299 A.D.2d 357, 749 N.Y.S.2d 175 (2d Dep't 2002) ("Further, because the noncoverage arose from a lack of inclusion, not a policy exclusion, a timely disclaimer of coverage was not required.")

A recent Second Department decision also illustrates that no disclaimer is required where the person seeking coverage is not an insured under the policy. In *Hargob Realty Associates v. Fireman's Fund Insurance Company*, __ A.D.3d__ (2nd Dep't April 19, 2010) the Second Department held that, "In addition, and contrary to the plaintiff's contention, the denial of coverage . . . constituted a denial based upon a 'lack of inclusion' rather than 'by reasons of exclusion' and, thus the defendant insurer was not required to deny coverage where none existed."

The General Star Policy is not a primary automobile liability policy. Rather, it is a commercial umbrella policy. The General Star Policy is written on an *inclusive* basis,

15

*i.e.* anyone operating the vehicle with the permission of Pharmacologic is covered. The absence of coverage is not due to an exclusion. *See United States Fire Ins. Co. v. New York Marine & Gen. Ins. Co.*, 268 A.D.2d 19, 706 N.Y.S.2d 377 (1st Dep't 2000). In the instant matter, there was never any obligation to indemnify Bridges since he did not have Pharmacologic's permission to drive the subject vehicle.

In *Dodge v. Legion Ins. Co.*, 102 F.Supp.2d 144 (S.D.N.Y 2000) the Court found a disclaimer was not required. The Court stated the familiar proposition that: "The New York Court of Appeals has explicitly held . . . that the failure to disclaim cannot create coverage which the policy was not written to apply. *Id.* at 155 (*citing Zappone*, 55 N.Y.2d 131). From this, the Court held "Because the policies, as written, do not cover this type of misconduct, under the principle of *Zappone*, Legion's failure to give notice to Dodge cannot create coverage by estoppel." *Id.* at 156. *See also Massachusetts Bay Ins. Co. v. National Sur. Corp.*, 215 A.D.2d 456, 626 N.Y.S.2d 271 (2d Dep't 1995), *lv. app. denied*, 87 N.Y.2d 806, 641 N.Y.S.2d 597 (1996) (denying coverage in the absence of a disclaimer).

Very recently, the Second Circuit Court of Appeals had occasion to address this precise issue of when New York Insurance Law §3420 requires an insurer to timely disclaim. In *NGM Insurance Company v. Blakely Pumping, Inc.*, 593 F.3d 150 (2d Cir. 2010) the court cited, with approval, to *Zappone* as follows:

> "The *Zappone* court held that the statute does not apply, however, where 'the policy as written could not have covered the liability in question under any circumstances' that is, notice is not required where there is no coverage 'by reason of lack of inclusion.' This rule avoids extending insurance coverage to liabilities 'incurred neither by the person insured nor in the vehicle insured."

16

The phrase "the policy as written could not have covered the liability in question under any circumstances" is dispositive to the instant matter. The General Star policy, as written, "includes" as an insured any person who is driving an automobile "with permission" of Pharmacologic. If at the time of the accident Bridges was operating the automobile "with permission" of Pharmacologic, he would be entitled to coverage. The General Star policy "as written" only includes individuals operating an auto with the permission of Pharmacologic at the time of the accident. Absent such permission, it is indisputable that Bridges is not an insured.

Other courts have also had occasion to address insurance coverage in the context of crime sprees. *Katz v. Allstate Ins. Co.*, 96 A.D.2d 930, 466 N.Y.S.2d 376 (2d Dep't 1983) ("We agree with the trial court's conclusion that no written notice of disclaimer was required here when, at the time of the accident, the insured's vehicle had been stolen and was being operated by the thief without the knowledge or consent of the owner . . . The policy clearly never contemplated any coverage while the vehicle was in the hands of a thief. Contrary to plaintiffs' contention, this is not a situation where both the driver and the vehicle were covered, but there was no insurance 'by reason of exclusion'; rather, there is no insurance protection here by 'lack of inclusion', and written notice was, therefore, not required.") As Bridges was not an insured, there was no need for General Star to disclaim coverage.

Based on the above, no disclaimer under Insurance Law §3420 was necessary.

Accordingly, Plaintiff's motion must be denied in its entirety as a matter of law.

B.    New York Insurance Law §3420 is not Available Because the Judgment
      was Rendered Against a Criminal Tortfeasor

17

Insurance Law §3420 is not available where the judgment is rendered against a non-insured criminal tortfeasor. The statute only pertains to a judgment against an insured:

§ 3420. Liability insurance; standard provisions; right of injured person

(2) A provision that in case judgment against the *insured* or the *insured's personal representative* in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the *insurer*, then an action may, except during a stay or limited stay of execution against the *insured* on such judgment .... (emphasis added)

It is undisputed that the *insured* under the General Star Policy is Pharmacologic. Likewise, there is no dispute that Bridges is not an insured under the General Star Policy based on previous judicial decisions.

Under the limited rights provided by Insurance Law §3420, Plaintiff may be able to "step into the shoes" of an insured when certain conditions are met. However, under Insurance Law §3420, Plaintiff cannot "step into the shoes" of the tortfeasor, who is indisputably not an insured. While Plaintiff would like to take a quantum leap and avoid this issue altogether, there is no question that the General Star Policy was issued to Pharmacologic, not Bridges. In the absence of this prerequisite, no disclaimer is necessary and Insurance Law §3420 is simply inapplicable. Despite any tortured interpretation by Plaintiff, §3420 does not provide for such an argument.

Accordingly, Plaintiff's motion must be denied in its entirety as a matter of law.

C.    Plaintiff's Citation to Certain Cases is Misplaced

Plaintiff's reliance on *Greater N.Y. Mut. Ins. Co. v. Clark*, 205 A.D.2d 857, 613 N.Y.S.2d 295 (3rd Dep't 1994) is misplaced. In *Greater N.Y. Mut.*, the court reviewed an

18

insurance policy that explicitly provided coverage for "covered autos", vastly different than the coverage provided by the General Star Commercial Umbrella Policy. General Star did not insure individual automobiles. Rather, General Star only included as an insured those person operating Pharmacologic's automobiles with the permission of Pharmacologic. *Clark* involved a fundamentally different policy form and provided a different scope of coverage. Moreover, the *Greater N.Y. Mut.* court found the subject language in the Greater New York policy was an exclusion, which is entirely different from the General Star Policy language. A court must interpret each insurance policy separately based upon the policy's distinct insuring terms. *Blenner v. Joseph Landis, Inc.*, 277 A.D. 489, 100 N.Y.S.2d 795 (3rd Dep't 1950).

Relying on *Greater N.Y. Mut.*, Plaintiffs also make the identical argument here that was recently rejected by the United States Court of Appeals for the Second Circuit. In *NGM Ins. Co. v. Blakely Pumping, Inc.*, 593 F.3d 150 (2d Cir. 2010), the Second Circuit distinguished *Greater N.Y. Mut.* because it relied on "an exclusion [that] [] withheld coverage for drivers who used the auto in question *without permission*." *NGM*, 593 F.3d at 154. On the other hand, the General Star Policy *includes* as insureds those who operate the vehicle in question "*with permission*." The Second Circuit found this "a critical distinction" and reaffirmed the all to familiar longstanding holding that "where there was no coverage by 'reason of lack of inclusion', . . . no disclaimer was required." *NGN*, 593 F.3d at 154 (*citing* Zappone, 55 N.Y.2d at 134). This Court must follow *NGM*'s rejection of *Greater N.Y. Mut.* and holding that no disclaimer is required here.

Likewise, Plaintiff's two other cases afford him no support. The insurance policy in *Gill v. Gouchie*, 210 A.D.2d 954, 620 N.Y.S.2d 679 (4th Dep't 1994) ". . . provided

19

coverage for the use of any automobile by family members living at home." Furthermore, in *Gill*, the insurer disclaimed coverage under a policy exclusion. The dispute in *Planet Ins. Co. v. Bright Bay Classic Vehicles, Inc.*, 75 N.Y.2d 394, 554 N.Y.S.2d 84 (N.Y. 1990) centered on an accident to a rental car and "a fleet insurance policy covering rental automobiles leased for less than 12 months." Furthermore, in *Planet Ins. Co.*, the court mainly ruled as it did for public policy reasons. *See id.*

Accordingly, Plaintiff's motion must be denied in its entirety as a matter of law.

## III.   THE GENERAL STAR POLICY ONLY ATTACHES IN EXCESS OF THE RETAINED LIMIT

It is axiomatic that excess insurance attaches only after a predetermined amount of underlying insurance is exhausted. *See Am. Home Assurance Co. v. Republic Ins. Co.*, 984 F.2d 76, 77 (2d Cir. 1993) ("excess coverage . . . attaches only after a predetermined amount of 'primary' coverage has been exhausted"); *see also Lumbermens Mut. Cas. Co. v. Allstate Ins. Co.*, 51 N.Y.2d 651, 435 N.Y.S.2d 953 (1980) (policy provided excess coverage where insurer would "pay the net loss in excess of insured's retained limit."). The General Star Policy only provides coverage over and above the "retained limit", and only responds when that "retained limit" has been exhausted.   It is undisputed that the "retained limit" has not been exhausted.[4]

The General Star Policy's coverage is limited to "ultimate net loss in excess of the retained limit," defined, among other things, as "underlying insurance, whether such

---

[4] As discussed above, because Bridges was not an insured, General Star had no obligation to disclaim coverage under Insurance Law §3420. Because the "retained limit" has not been exhausted, General Star would still have no duty to disclaim. *See Allcity Ins. Co. v. Sioukas*, 51 A.D.2d 525, 378 N.Y.S.2d 711 (1st Dep't 1976) (Excess insurer's duty to disclaim arises a reasonable time after the primary insurance coverage has been exhausted and the retained limit met); *Barber v. RLI Ins. Co.*, 2008 U.S. Dist. LEXIS 104128 (N.D.N.Y 2008) (finding that excess insurer had no duty to "send Plaintiffs a disclaimer" because primary policy not exhausted).

*underlying insurance is collectible or not*[.]" *See* Plaintiff's Statement of Material Facts, ¶ 1; *See* Plaintiff's Exhibit ¶ 6.

"Underlying Insurance" is defined as "the coverage(s) afforded under insurance policies, for the limits shown, as designated in the SCHEDULE OF INSURANCE and any renewals and replacements of those policies." *See* Plaintiff's Statement of Material Facts, ¶ 1; *See* Plaintiff's Exhibit ¶ 6. This "Schedule of Underlying Insurance" specifically includes a insurance policy issued by St. Paul with limits of liability of $1,000,000 per occurrence/aggregate, as well as an insurance policy ultimately issued by Hartford Fire Insurance Company. *See* Plaintiff's Statement of Material Facts, ¶ 1; *See* Plaintiff's Exhibit ¶ 6. This "Schedule of Underlying Insurance controls" General Star's excess obligation. *See Liberty Mut. Ins. Co. v. Insurance Co. of the State of Pa.*, 43 A.D.3d 666, 841 N.Y.S.2d 288 (2d Dept. 2007). The General Star Policy, thus, requires the exhaustion of "underlying insurance, whether such underlying insurance is collectible or not," before any payment obligation arises. *See* Plaintiff's Statement of Material Facts, ¶ 1; *See* Plaintiff's Exhibit ¶ 6.

It is undisputed that the "retained limit" has not been exhausted. Pharmacologic and Bridges tendered the underlying action to Hartford and St. Paul. While Hartford paid its full policy limit of $500,000, *See* Plaintiff's Statement of Material Facts, ¶ 28; *See* Plaintiff's Exhibit ¶ 20, St. Paul refused to contribute, leaving $1 million of underlying insurance available.

The General Star Policy makes clear that the "retained limit", defined, among other things, as "underlying insurance, whether such underlying insurance is collectible or not," must be exhausted. Based on St. Paul's refusal to contribute, the "retained limit"

21

was undisputedly not exhausted. Thus, because the "retained limit" was not exhausted, General Star's attachment point was not reached, and its excess policy does not come into play. *See, e.g., United States Fid. & Guar. Co. v. Treadwell Corp.*, 58 F. Supp. 2d 77 (S.D.N.Y. 1999) (excess insurer not required to drop-down); *Zurich-American Ins. Co. v. Mead Reins. Corp.*, 161 A.D.2d 403, 555 N.Y.S.2d 333 (1st Dept. 1990) (same), *appeal denied*, 76 N.Y.2d 710, 563 N.Y.S.2d 61 (1990); *Ambassador Assocs. v. Corcoran*, 143 Misc.2d 706, 541 N.Y.S.2d 715 (N.Y. Sup. Ct., New York County, 1989), *aff'd*, 168 A.D.2d 281, 562 N.Y.S.2d 507 (1st Dept. 1990), *affd*, 79 N.Y.2d 871, 581 N.Y.S.2d 276 (1992) (same); *Pergament Distrib. Inc. v. Old Republic Ins. Co.*, 128 A.D.2d 760, 513 N.Y.S.2d 467 (2d Dept. 1987) (same), *appeal denied*, 70 N.Y.2d 607, 519 N.Y.S.2d 1031 (1987).

Accordingly, Plaintiff's motion must be denied in its entirety as a matter of law.

## IV. THE UNDERLYING *EX PARTE* JUDGMENT IS UNENFORCEABLE AS A MATTER OF LAW

Fed. R. Civ. Pro. 60(b) provides:. . .

> (b)     Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect, . . .
> (3) fraud (whether previously called intrinsic or extrinsic), . . . or applying it
> (6) any other reason that justifies relief.

Fed R. Civ. Pro. 60(b) (1)-(6); *see Griffith v. Bank of New York*, 147 F.2d 899 (2d Cir. N.Y. 1945) ("[I]t is well settled that the federal courts may exercise their equity powers so as to set aside, enjoin enforcement of, or ignore a state court judgment obtained by fraud.").

22

In this declaratory judgment action under Insurance Law §3420, Plaintiff seeks to recover $2,402,962.45, the purported amount of the *ex parte* Judgment entered against Bridges by the Albany County Clerk. However, this *ex parte* Judgment is unenforceable, as a matter of law, because it fails to account for the *remittitur* and stipulated reduction, something the Plaintiff failed to advise both the Supreme Court and this Court. At this juncture, we subscribe no particular motive to this omission. However, whether it be mistake, inadvertence, excusable neglect, or fraud is irrelevant. The Judgment is fundamentally incorrect and is, thus, unenforceable, as a matter of law.

After the jury verdict, one aspect of the various post-trial motions requested a *remittitur* of the jury's excessive award. "*Remittitur* is the process by which a court compels [the party that prevailed at trial] to choose between reduction of an excessive verdict and a new trial." *Cross v. N.Y. City Transit Auth.*, 417 F.3d 241, 258 (2d Cir. 2005) (citation and internal quotation marks omitted); *Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 337 (2d Cir. 1993) (explaining that "[i]f it could be demonstrated that the verdict included any of [plaintiff's] unsubstantiated damages claims, the award would be by definition excessive," and *remittitur* would be appropriate).

Specifically, the Supreme Court granted a new trial on damages, unless the plaintiff agreed to execute a written stipulation and file same in the Office of the Clerk of Albany County reducing the verdict. We are aware that Plaintiff stipulated to the reduction of the awards set forth in the October 21, Decision and Order. *See* Plaintiff's Statement of Material Facts, ¶ 23; *See* Plaintiff's Exhibit ¶ 13. However, based on this

23

record, there is absolutely no proof the Stipulation was ever filed in the Office of the Clerk of Albany County.

After stipulating to the reductions, rather than face a new trial, the Plaintiff subsequently sought an *ex parte* Order as against Bridges under N.Y. C.P.L.R. 50-B. However, §5041 provides:

> In order to determine what judgment is to be entered on a verdict in an action to recover damages for personal injury, injury to property or wrongful death under this article, and not subject to article fifty-A of this chapter, the court shall proceed as follows:
>
> (a) The court shall apply to the findings of past and future damages any applicable rules of law, including set-offs, credits, comparative negligence pursuant to section fourteen hundred eleven of this chapter, additurs, and *remittiturs*, in calculating the respective amounts of past and future damages claimants are entitled to recover and defendants are obligated to pay.

N.Y. C.P.L.R. §5041 (emphasis added). Notably, this *ex parte* Order failed to account for the reductions previously ordered by the Court and stipulated to by the Plaintiffs. As a consequence, all of 50-B calculations, interest, etc., are fundamentally incorrect, as a matter of law.

This *ex parte* Order was then converted into an *ex parte* Judgment that fails to account for the *remittitur* and stipulated reductions and is, likewise, unenforceable, as a matter of law. *See* Plaintiff's Statement of Material Facts, ¶ 23; *See* Plaintiff's Exhibit ¶ 23.

Plaintiff argues that the *remittitur* only applies to one defendant. However, this argument ignores the very purpose of a *remittitur* and is belied by the October 21 Decision and Order *and* Plaintiffs own Stipulation. By definition, in granting the *remittitur*, the Supreme Court found that Plaintiffs failed to prove their entitlement to a

24

certain quantum of damage, as a matter of law. These are reductions in the amount of damages based on insufficient evidence, irrespective of any liability finding as against a particular defendant. Indeed, nowhere in the discussion of the *remittitur* does the October 21, 2008 Decision and Order state or suggest that these reductions are only applicable to a particular defendant. *See* Plaintiff's Statement of Material Facts, ¶ 20; *See* Plaintiff's Exhibit ¶ 12. Plaintiff's own fanciful interpretation simply ignores black letter law. Once again, we ascribe no particular motivation in this conduct.

Moreover, Plaintiff's own Stipulation does not state or even suggest that these reductions were limited to a particular defendant, as Plaintiff now contends to this Court. *See* Plaintiff's Statement of Material Facts, ¶ 23; *See* Plaintiff's Exhibit ¶ 13. Rather, the stipulated reduction clearly contains no limiting language as to any particular defendant.

Ironically, if Plaintiff were somehow unhappy with the *remittitur* and did not agree to these stipulated reduction, his remedy, as expressly found by the Supreme Court and reflected in the October 21, 2008 Order, is a new trial on damages, not the unilateral entry of an *ex parte* Judgment for the entire jury verdict against a non-moving defendant.

Instead, Plaintiffs proceeded to enter an *ex parte* Order and *ex parte* Judgment that are improper and incorrect, as a matter of form, procedure and law.

## CONCLUSION

For all the foregoing reasons, Plaintiffs' motion for summary judgment must be denied in its entirety and this Court should *sua sponte* grant General Star summary judgment and dismiss Plaintiff's complaint, with prejudice, in its entirety.

Dated:     July 21, 2010
           New York, New York

                              Respectfully Submitted,

                    By:       _____
                              Christopher T. Bradley (CTB-516010)
                              Marshall Conway Wright & Bradley, P.C.
                              116 John Street
                              New York, New York 10038
                              (212) 619-4444
                              Attorneys for Defendant
                              General Star Indemnity Company

TO:    Flink Smith, LLC
       23 British American Boulevard
       Latham, New York 12110
       Attorneys for Plaintiff

MARSHALL, CONWAY, WRIGHT & BRADLEY  ·  116 JOHN STREET  ·  NEW YORK, N. Y. 10038